IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BENJAMIN M. ERNST,                        )
                                          )
        Plaintiff,                        )
                                          )
        v.                                )
                                          )
NORTH AMERICAN COMPANY FOR                )
LIFE AND HEALTH INSURANCE,                )
                                          )
        Defendant.                        )
_____          )
                                          )       1:16CV705
NORTH AMERICAN COMPANY FOR                )
LIFE AND HEALTH INSURANCE,                )
                                          )
        Cross- and Counter-claim          )
        Plaintiff                         )
                                          )
        v.                                )
                                          )
DONNA M. JACKSON and BENJAMIN             )
M. ERNST                                  )
                                          )
        Cross- and Counter-claim          )
        Defendants                        )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

This action arises out of a dispute over entitlement to the proceeds of an annuity administered by Defendant North American Company for Life and Health Insurance ("NAC"). Plaintiff Benjamin Ernst contends that NAC improperly paid the proceeds to his aunt, cross-claim Defendant Donna A. Jackson, and brings this action as the putative beneficiary. Faced now with conflicting claims of entitlement, NAC seeks to recover the annuity proceeds from the

aunt, deposit them with the court, and leave it to Ernst and the aunt to litigate the question of which one is entitled to recovery.

Before the court are NAC's motion to dismiss three counts of Ernst's complaint (Doc. 15) and Jackson's motion to dismiss NAC's cross-claims (Doc. 22). For the reasons set forth below, NAC's motion to dismiss will be granted as to count II, which alleges violations of North Carolina's trade practice laws, and as to count III, which alleges waiver and equitable estoppel, but denied as to count IV, which alleges negligent misrepresentation. Jackson's motion to dismiss will be granted as to count I of NAC's counter-claim and cross-claim, which alleges interpleader, and denied as to count II, which alleges unjust enrichment.

## I. BACKGROUND

The allegations of the pleadings, viewed in the light most favorable to the non-moving parties, show the following:

Ernst's mother, Sharon Murray, died of colon cancer in 2003, when Ernst was eleven years old. Her life insurance policy paid $451,751.91 to her father, Theron Murray, its designated beneficiary. (Doc. 5 at 2, ¶¶ 5, 7, 10.)

In 2008, when Ernst was seventeen years old, Theron Murray placed the life insurance proceeds in the NAC annuity that is the subject of this dispute. (Id. at 3, ¶ 13.) At the time, the named

2

beneficiary was Jackson, Ernst's aunt.[1]  (<u>Id.</u>; Doc. 14-2.)

In June of 2012, Theron Murray executed a Beneficiary Change Request Form to designate Ernst the annuity's beneficiary.  (Doc. 5 at 4, ¶ 18; Doc. 14-3.)  NAC issued an amendatory endorsement reflecting Ernst as the beneficiary.  (Doc. 5 at 4, ¶ 19; Doc. 14-4.)

Two years later, in July of 2014, Theron Murray purportedly restored Jackson as the sole beneficiary, using the same form.[2]  On this occasion, Jackson was designated an "irrevocable beneficiary."  (Doc. 5 at 4, ¶ 21; Doc. 14-5 at 2, 5.)  The form stated: "If you choose an irrevocable beneficiary, written consent is required before any future changes can be made."  (Doc. 14-5 at 2.)  NAC responded with an amendatory endorsement listing Jackson as the primary beneficiary.  (Doc. 5 at 5, ¶ 23; Doc. 14-6.)  The endorsement said nothing about Jackson's purported status as an "irrevocable" beneficiary.

On August 5, 2014, less than a month after NAC sent its amendatory endorsement, Theron Murray sent NAC yet another Beneficiary Change Request Form, again listing Ernst as the primary beneficiary.  (Doc. 5 at 5, ¶ 24; Doc. 14-7.)  Ernst was listed as

---

[1] Murray had three daughters: Sharon Murray, Kathryn Murray Garrison, and Jackson.  (Doc. 5 at 2, ¶ 4.)

[2] Jackson had attempted to add herself as a beneficiary about a month earlier, but when she sent the form to the insurance agent, the agent spoke with Theron Murray about it and, as a result, the agent did not forward the form to NAC.  (Doc. 5 at 4, ¶ 20.)

3

a "revocable" beneficiary, and the form stated: "If you choose an irrevocable beneficiary, written consent is required before any future changes can be made." (Doc. 14-7 at 2.) NAC responded with an amendatory endorsement, dated August 16, 2014, listing Ernst as the primary beneficiary. (Doc. 5 at 6, ¶ 28; Doc. 14-8.) The endorsement did not refer to Jackson or to the question of revocability.

Theron Murray died six months later, on February 1, 2015. (Doc. 5 at 6, ¶ 31.)

On February 19, 2015, NAC mailed Ernst claim forms and a letter stating that "[o]ur records indicated that you are a primary beneficiary of the above referenced Contract." (Doc. 5-3 at 1.) The letter states that his portion of the proceeds was $651,861.64. It lists a toll-free customer-service phone number and states that "[a] service professional within the Claims and Benefit Department will be happy to take your important call." (Id.)

Ernst alleges that after NAC sent that letter, Jackson "pressed" NAC to pay her the annuity proceeds. (Doc. 5 at 6, ¶ 32.) NAC alleges that Jackson submitted an "Annuity Proof of Death Claimant's Statement" dated February 25, 2015. (Doc. 14 at 9, ¶ 12; see Doc. 14-9.) NAC did in fact pay Jackson the annuity's proceeds, in the amount of $685,643.92. (Doc. 5 at 6-7, ¶ 33; Doc. 14 at 10, ¶ 15; Doc. 14-12.)

NAC alleges that it sent Ernst three letters, dated June 12,

4

2015, June 30, 2015, and July 31, 2015, informing him that he was not the beneficiary and that he should call NAC if he had questions. (Doc. 14 at 10, ¶ 14; see Doc. 14-11.) It appears undisputed that on September 3, 2015, NAC issued a check to Jackson in the amount of $685,643.92 in payment of the annuity proceeds. (See Doc. 14-12.)

On June 7, 2016, Ernst brought the present action against NAC in North Carolina Superior Court, alleging breach of contract (count I), violations of North Carolina's trade practice laws (count II), "estoppel/waiver" (count III), and "negligent misrepresentation – gross negligence" (count IV). (Doc. 5 at 1, 7-19.) On June 23, 2016, NAC removed the case on diversity grounds.[3] (Doc. 1.) It answered Ernst's complaint as to the breach of contract claim (Doc. 14 at 1-7, ¶¶ 1-44) and moved to dismiss the remaining counts (Doc. 15). NAC also brings a counterclaim against Ernst for interpleader (Doc. 15 at 8-13, ¶¶ 1-28) and a cross-claim against Jackson for interpleader and for unjust enrichment (id. at 8-11, 13-14, ¶¶ 1-18, 29-36). Jackson now moves to dismiss both claims. (Doc. 22.) Ernst supports Jackson's motion to dismiss NAC's interpleader claim. (Doc. 24 at

---

[3] Complete diversity exists. Ernst is a resident of Massachusetts. (Doc. 5 at 1, ¶ 1.) NAC is an Iowa corporation with its principle place of business in Iowa. (Doc. 14 at 2, ¶ 2.) Jackson is a resident of North Carolina. (Id. at 10, ¶ 16.) Because the annuity's proceeds were over $75,000 and Ernst claims he is entitled to the whole of the annuity, the amount-in-controversy requirement is also met. See 28 U.S.C. § 1332(a).

6.)  The motions are fully briefed and ready for decision.

## II.  ANALYSIS

### A.  Standard of Review

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).  In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).  To be facially plausible, a claim must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  While "the complaint, including all reasonable inferences therefrom, [is] liberally construed in the plaintiff's favor," this "does not mean that the court can ignore a clear failure in the pleadings to allege any facts [that] set forth a claim." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citing McNair v. Lend Lease Trucks, Inc., 95 F.3d 325, 327

6

(4th Cir. 1996)).  Mere legal conclusions are not accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678.

### B.  NAC's Motion to Dismiss

#### 1.  Misrepresentation – Unfair Claims Handling Practices Claim (Count II)

NAC first moves to dismiss count II of the complaint, in which Ernst alleges that NAC violated North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1 et seq., and North Carolina statutory provisions governing life insurance claims handling, <u>see</u> N.C. Gen. Stat. § 58-63-15(11) (prohibiting certain claims investigation and handling acts); <u>id.</u> § 58-58-40 (prohibiting the misrepresentation of policy terms).[4] Ernst limits this claim to NAC's conduct <u>after</u> Theron Murray's

---

[4] Ernst argues that NAC is a "life insurance company" as defined by N.C. Gen. Stat. § 58-58-1, thereby subjecting NAC to liability under N.C. Gen. Stat. §§ 58-63-15(11) and 58-58-40.  (Doc. 20 at 6.)  He also argues that the annuity is covered by N.C. Gen. Stat. §§ 58-7-15(1) and (2), which define the terms "life insurance" and "annuities," because the annuity was to be paid on the death of a person and because the statute defines "annuities" to include all agreements to make periodical payments at specified intervals.  (<u>Id.</u> at 6-7.)  In its reply, NAC responds that because the annuity does not insure a life, it cannot be "life insurance" and therefore cannot support claims under N.C. Gen. Stat. §§ 58-63-15(11) and 58-58-40.  (Doc. 21 at 2-3 (citing <u>Hager v. Lincoln Nat. Life Ins. Co.</u>, 126 N.C. App. 349, 484 S.E.2d 828 (1997)).)  It is the case that these statutes do not provide a private right of action but where applicable can serve as the basis for a Chapter 75 violation.  <u>See Pearce v. Am. Def. Life Ins. Co.</u>, 316 N.C. 461, 468-69, 343 S.E.2d 174, 179 (1986).  Because Ernst's UDTPA claims fail for the reasons set forth below, the court assumes, without deciding, that the annuity falls within the scope of these statutes.

death and in connection with its June 12 and 30, 2015 and July 31, 2015 letters to Ernst denying payment.  (Doc. 20 at 8-9.)

To succeed on a UDTPA claim, Ernst must "demonstrate (1) an unfair or deceptive act or practice or unfair method of competition, (2) in or affecting commerce, which (3) proximately caused actual injury to the plaintiff." Westchester Fire Ins. Co. v. Johnson, 221 F. Supp. 2d 637, 642-43 (M.D.N.C. 2002) (citing Spartan Leasing v. Pollard, 101 N.C. App. 450, 460, 400 S.E.2d 476, 482 (1991)).  Ernst alleges that NAC committed three kinds of unfair or deceptive acts to satisfy the first element: making "malicious[,] intentional misrepresentations" regarding the annuity's beneficiary; and engaging in conduct prohibited by N.C. Gen. Stat. §§ 58-63-15(11) and 58-58-40.  (Doc. 5 at 9-12, ¶¶ 45-61.)  In essence, Ernst alleges that NAC "attempted to hide the fact that Ernst was the current official designated beneficiary on the Annuity" under the August 16, 2014 endorsement and "attempted to discourage him from seeking benefits pursuant to the Annuity." (Id. at 9, ¶ 48.)  NAC makes several arguments in support of its motion to dismiss, the principal ones being that the alleged conduct cannot be unfair or deceptive and that Ernst has not alleged sufficient facts to establish causation.  The court agrees with NAC.

In Jefferson-Pilot Life Insurance Co. v. Spencer, the Supreme Court of North Carolina held that a misrepresentation to an insured

8

"as to who was the owner and who was the beneficiary of the policy"
did not constitute an unfair or deceptive practice under § 58-63-
15(1), which proscribes certain misrepresentations and false
advertising of policy contracts (including those that induce the
policyholder to lapse, forfeit, or surrender his insurance). 336
N.C. 49, 53, 442 S.E.2d 316, 318 (1994). The court held this is
so because "[a]n insurance company gains no advantage if it
incorrectly advises a person as to who is the owner or beneficiary
of a policy." Id. at 53, 442 S.E.2d at 318. In light of this, it
is unlikely the North Carolina Supreme Court would find that an
insurer gains an advantage by telling a policy's beneficiary that
he is not the beneficiary. Therefore, as in Spencer, that
misrepresentation does not constitute an unfair or deceptive
practice.

     In addition, as NAC argues, Ernst fails to allege adequately
that NAC's violations of North Carolina's trade practice laws
proximately caused his injuries. (Doc. 16 at 7-8.) Where the
UDTPA claim is founded on alleged misrepresentations, the
proximate-cause prong of the three-part UDTPA test "is similar to
the detrimental reliance requirement under a fraud claim." Wysong
& Miles Co. v. Emp'rs of Wausau, 4 F. Supp. 2d 421, 433 (M.D.N.C.
1998) (quoting Pearce v. Am. Def. Life Ins. Co., 316 N.C. 461,
471, 343 S.E.2d 174, 180 (1986)); see also Johnson, 221 F. Supp.
2d at 649 (applying the rule to a claim based on conduct listed in

9

§ 58-63-15(11)).  Therefore, to make out a claim, Ernst would have to allege sufficient facts to make this aspect of his claim - that he detrimentally relied on the alleged misrepresentations - plausible.  Johnson, 221 F. Supp. 2d at 649; Solum v. CertainTeed Corp., No. 7:15-CV-114-D, 2015 WL 6505195, at *5 (E.D.N.C. Oct. 27, 2015) (finding that a plaintiff "must plausibly allege actual reliance and reasonable reliance" (citing Caper Corp. v. Wells Fargo Bank, N.A., 578 F. App'x 276, 287 (4th Cir. 2014); Bumpers v. Cmty. Bank of N. Va., 367 N.C. 81, 89, 747 S.E.2d 220, 227 (2013))).

Nowhere in his complaint does Ernst allege that he relied in any fashion on NAC's alleged misrepresentations or conduct.  He cursorily claims that NAC's claims handling "activities" - including sending him letters telling him he was not the beneficiary - proximately caused him injury (Doc. 5 at 12, ¶ 59), but that is only because he was not paid.  Ernst fails to allege that he changed his position in any way in reliance on NAC's statements, all of which came after Theron Murray's death.  Rather, his claim is that NAC denied paying him the annuity proceeds for the wrong reasons, in contradiction to the company's earlier letter acknowledging him as the beneficiary.

Ernst therefore fails to allege facts to make a UDTPA claim plausible, and the motion to dismiss this claim will be granted.

## 2.    Estoppel/Waiver Claim (Count III)

NAC also moves to dismiss count III of the complaint, which alleges that NAC waived any ability to rely on its internal procedures requiring Jackson, as irrevocable beneficiary, to approve the naming of Ernst as beneficiary and that the company is otherwise estopped from relying on those procedures based on its conduct in designating Ernst as beneficiary.

NAC argues that this claim should be dismissed because it is equitable and Ernst has an adequate remedy at law through his breach of contract claim. (Doc. 16 at 10.) Under North Carolina law, equitable remedies are generally only available in the absence of legal remedies. See Hinson v. United Fin. Servs., Inc., 123 N.C. App. 469, 473, 473 S.E.2d 382, 385 (1996) (citation omitted). As a general matter, however, an equitable claim can be alleged as an alternative to a legal claim. (Doc. 20 at 15.) See Fed. R. Civ. P. 8(b)(2), (3). At some point, a plaintiff will have to make an election of remedies. But Ernst's claim for "waiver" fails for a related reason.

Waiver is "an intentional relinquishment or abandonment of a known right or privilege." Bombardier Cap., Inc. v. Lake Hickory Watercraft, Inc., 178 N.C. App. 535, 540, 632 S.E.2d 192, 196 (2006) (citation omitted). To establish waiver, it must be shown that at the time of the waiver, the waiving party had actual knowledge of a right, advantage, or benefit that they intended to

11

relinquish.  Fetner v. Rocky Mount Marble & Granite Works, 251
N.C. 296, 302, 111 S.E.2d 324, 328 (1959).  When an insurer is
alleged to have waived a provision of an insurance contract, the
waiver is "predicated on knowledge on the part of the insurer of
the pertinent facts and conduct thereafter inconsistent with an
intention to enforce the condition."  Cullen v. Valley Forge Life
Ins. Co., 161 N.C. App. 570, 575, 589 S.E.2d 423, 428 (2003)
(citation omitted).  An insurer is presumed to be cognizant of its
own files and of its communications with the insured.  Id.

Count III of Ernst's complaint alleges that NAC waived its
right to enforce its internal change-of-beneficiary policies when
it issued the amendatory endorsement on August 16, 2014.  (Doc. 5
at 14, ¶ 70 (alleging that NAC's waiver of "its own procedures for
changing a beneficiary" caused "[a]ny internal defect in the
process of changing the beneficiary from" Jackson to Ernst through
the endorsement); id. at 15, ¶ 75 (alleging that when NAC issued
that endorsement, it "voluntarily waived any procedure that it may
have otherwise internally established for changing a
beneficiary").)  In his brief, Ernst argues that NAC's change-of-
beneficiary procedures exist for its own benefit and thus may be
waived by acts inconsistent with them.  (Doc. 20 at 16-17.)

NAC is correct that this "claim" is no more than a restatement
of Ernst's contract claim in count I, which alleges that Ernst is
a third-party beneficiary of Theron Murray's annuity contract.  A

12

necessary part of Ernst's contract claim is that NAC "waived its own procedures on the method of changing a purported irrevocable beneficiary designation on an annuity when it accepted the August 5, 2014 Beneficiary Change Request Form without a signature from the alleged irrevocable beneficiary." (Doc. 5 at 8, ¶ 39.) Thus, Ernst has failed to demonstrate the existence of a separate cause of action for "waiver."

Every case Ernst cites in support of his waiver claim indicates that the doctrine is available to defend against another cause of action. It is invoked by either the second beneficiary – i.e., the beneficiary the insured chose later, using a defective procedure - or the insurer, always to defend against the first beneficiary's charge that the insurer failed to adhere to its own change-of-beneficiary procedures. The courts consistently reason that because the procedures exist for the insurer's benefit and not for the benefit of the first beneficiary, the first beneficiary cannot use the procedures to deprive the second beneficiary of the proceeds. This is consistent with Federal Rule of Civil Procedure 8(c)(1), which lists waiver as an affirmative defense to a claim.

In six of the cases Ernst cites in favor of his waiver claim, it was the second beneficiary who invoked the waiver doctrine. In these cases, the insurers were merely stakeholders in interpleaders. (Doc. 20 at 16-17 (citing <u>Widows Fund of Sudan Temple v. Umphlett</u>, 246 N.C. 555, 99 S.E.2d 791 (1957); <u>Reid v.</u>

13

*Durboraw*, 272 F. 99 (4th Cir. 1921); *Schwerdtfeger v. Am. United Life Ins. Co.*, 165 F.2d 928, 929 (6th Cir. 1948); *Provident Indem. Life Ins. Co. v. Durbin*, 541 F. Supp. 4 (E.D. Pa. 1981); *Murphy v. Gibson*, 465 So. 2d 373 (Ala. 1985); *Rasmussen v. Mut. Life Ins. Co. of N.Y.*, 70 N.D. 295, 293 N.W. 805, 806 (1940)).) In each case, the insurer asked the court to determine who between two beneficiaries was entitled to proceeds. The second beneficiary invoked waiver doctrine, arguing that the first beneficiary should not be allowed to upset the insured's last known intent by appealing to a provision that existed only for the insurer's benefit. *E.g.*, *Umphlett*, 246 N.C. at 560, 99 S.E.2d at 794 ("[A]n insurer waives compliance with policy provisions inserted for its benefit by interpleading the original and substituted beneficiary and payment of the sum owing into court." (citations omitted)); *see also Murphy v. Gibson*, 465 So. 2d 373, 377 (Ala. 1985) ("[W]hen the insurer interpleads the proceeds of a life insurance policy and chooses not to take sides between claimants, the insurer waives strict compliance with the policy requirements by the insured."). The other two cases Ernst cites involve insurers invoking waiver doctrine as a defense to the first beneficiaries' causes of action. (Doc. 20 at 17 (citing *Blount v. Life Ins. Co. of Ga.*, 139 Ga. App. 238, 238, 228 S.E.2d 140, 141 (1976); *Wooten v. Grand United Order of Odd Fellows*, 176 N.C. 52, 96 S.E. 654 (1918)).) In no case is waiver an affirmative claim for relief.

14

Ernst argues that his claim for estoppel, however, constitutes a separate claim for equitable estoppel (Doc. 20 at 18), although his complaint does not use that term (Doc. 5 at 12-16, ¶¶ 62-77). While this claim could proceed as a separate cause of action, it fails because, as NAC argues, there is no factual allegation to make an inference of detrimental reliance plausible. (Doc. 16 at 12 (citing <u>State Highway Comm'n v. Thornton</u>, 271 N.C. 227, 240, 156 S.E.2d 248, 258 (1967)).)

A claim of equitable estoppel under North Carolina law requires proof of the following as related to the party estopped: "(1) Conduct which amounts to a false representation or concealment of material facts, or at least, which is reasonably calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party afterwards attempts to assert; (2) intention or expectation that such conduct shall be acted upon by the other party, or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon; (3) knowledge, actual or constructive, of the real facts." <u>Peek v. Wachovia Bank & Tr. Co.</u>, 242 N.C. 1, 11-12, 86 S.E.2d 745, 753 (1955). As to the party claiming estoppel, the following must be shown: "(1) lack of knowledge and the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party sought to be estopped; and (3) action based thereon

15

of such a character as to change his position prejudicially." Id. at 12, 86 S.E.2d at 753. Thus, North Carolina courts uniformly hold that the party invoking equitable estoppel must have detrimentally and reasonably relied on the conduct or silence of the party to be estopped. Id. Ernst's complaint does not allege that he relied on NAC's conduct. Instead, as noted above, it alleges only that Murray reasonably relied on NAC's amendatory endorsement listing Ernst as the beneficiary. (Doc. 5 at 15, ¶ 74.) Ernst alleges that Murray's reliance led him to abstain from taking additional steps to ensure that Ernst became the beneficiary. (Id. at 13–14, ¶ 67.)

Ernst relies on Pearce v. American Defender Life Insurance Co., which allowed a beneficiary to maintain a UDTPA action against an insurer for misrepresentations the insurer made to the insured. (Doc. 20 at 18.) See 316 N.C. 461, 472, 343 S.E.2d 174, 181 (1986). As NAC notes, however, Pearce did not address a question of equitable estoppel. (Doc. 21 at 9.) Because Ernst fails to allege that he reasonably and detrimentally relied on NAC's alleged misrepresentations, his equitable estoppel claim will be dismissed as well.

### 3. Negligent Misrepresentation – Gross Negligence Claim (Count IV)

Count IV alleges that NAC was grossly negligent in providing Ernst untrue information about the annuity in the company's

16

August 16, 2014 endorsement letter and in poorly administering the contract. NAC moves to dismiss on several grounds.

NAC argues that it owed Ernst no duty, fiduciary or otherwise, independent from its contractual duty in the annuity and that Ernst simply seeks "to couch his breach of contract claim as a tort." (Doc. 16 at 13-14.) In response, Ernst relies on Jefferson-Pilot Life Insurance Co. v. Spencer, in which the North Carolina Supreme Court, under similar circumstances, held that an insurer owes a beneficiary the duty not to provide false information to the insured, so that the insured can intelligently designate his beneficiary. 336 N.C. 49, 54, 442 S.E.2d 316, 318–19 (1994). NAC responds that this rule applies only to misrepresentations the insurer made to the insured, not to the beneficiary, and that Ernst alleges only that NAC had a duty to provide him (as opposed to his grandfather) accurate information, taking the case outside of Spencer's holding. (Doc. 21 at 10.)

NAC overlooks paragraph 67 of Ernst's complaint. That paragraph, which is incorporated by reference into count IV, alleges that had Theron Murray known that NAC's August 5, 2014 beneficiary form was ineffective to designate Ernst as beneficiary, Theron Murray, as insured, "could have taken appropriate steps to make sure that the designated beneficiary was Ernst." (Doc. 5 at 14, ¶ 67.) Read in the light most favorable to Ernst, these allegations support the reasonable inference that

17

NAC owed Ernst a duty not to misrepresent to Murray who was designated the proper beneficiary. See Ibarra, 120 F.3d at 474. In addition, Ernst alleges that he is the proper beneficiary to the annuity (Doc. 5 at 16, ¶ 81) and that NAC administered the annuity for Murray, as owner (id. at 3, ¶ 13). Spencer found that such facts supported a claim by a beneficiary. See 336 N.C. at 54, 442 S.E.2d at 318-19 ("The insurer is under a duty to the [beneficiary] not to provide false information to the insured."). Ernst therefore pleads facts adequate to state a misrepresentation claim similar to that in Spencer.[5]

As with Ernst's equitable claims, count IV is pled in the alternative. While Ernst may not be able to recover on both his breach of contract claim and on a tort theory, Rule 8 permits Ernst to plead the two claims in the alternative. Therefore, NAC's motion to dismiss count IV will be denied.

## C. Jackson's Motion to Dismiss

### 1. Interpleader

Jackson moves to dismiss NAC's claim for interpleader pursuant to Federal Rule of Civil Procedure 22 on the ground that

---

[5] To the extent count IV alleges ordinary or gross negligence based on claims handling or the existence of a fiduciary duty, the claim fails as a matter of law. See Johnson v. Household Life Ins. Co., No. 5:11-CV-301-BR, 2012 WL 5336959, at *9 (E.D.N.C. Oct. 26, 2012) (dismissing a beneficiary's breach of fiduciary duty claim on grounds that she could not base a claim on a fiduciary duty allegedly owed another person and that there is no authority that an insurer owes such a duty to a beneficiary of life insurance policy).

NAC is not in possession of the funds at issue but already disbursed them.

"The purpose of an interpleader action is to protect the stakeholder against excessive litigation when there are multiple claims to a single stake." CMFG Life Ins. Co. v. Schell, No. GJH-13-3032, 2014 WL 7365802, at *2 (D. Md. Dec. 22, 2014) (citing State Farm Fir & Cas. Co. v. Tashire, 386 U.S. 523, 534 (1967)). Interpleaders can be brought under 28 U.S.C. § 1335 and under Federal Rule of Civil Procedure 22. NAC brings its interpleader only under the latter. Importantly to this case, to invoke Rule 22, a defendant must be exposed to "double or multiple liability" or the potential for such liability. Fed. R. Civ. P. 22(a)(1), (2).

In a typical interpleader, the movant – called the stakeholder – admits liability, deposits the funds at issue with the court, and withdraws from the proceedings. It is then left to the claimants to litigate who is entitled to the funds. Here, instead of depositing the disputed funds and leaving it to Jackson and Ernst to decide who is entitled to them, NAC asks the court to require Jackson to relinquish the funds NAC has already dispersed to her. Presumably, NAC would then ask to withdraw from the case and leave it to Jackson and Ernst to determine who is entitled to the annuity proceeds.

The problem with this theory is that NAC is not being asked

to choose between competing claimants such that it is at risk of being exposed to multiple liability. It already made its decision and voluntarily paid Jackson without a lawsuit or the threat of one. This does not constitute liability. NAC nevertheless assumes that its initial, pre-litigation payment to Jackson was a "liability." (E.g., Doc. 25 at 6 ("[B]oth Ernst and Jackson made claims on the fund, and attached exhibits supporting these allegation [sic], and neither has disclaimed any interest in it.").) The only threat of liability NAC faces is from Ernst. If he were to succeed on his claim, NAC would not face double liability – it simply would have paid Jackson in error and would be left to seek recovery from Jackson. See Libby, McNeill & Libby v. City Nat'l Bank, 592 F.2d 504, 507-08 (9th Cir. 1978) (holding that to succeed on an interpleader, the stakeholder must show that at least two parties have made claims against the fund in question). While it is true that a stakeholder may use an interpleader before one or more of the potential claims have been asserted, interpleader in that circumstance still requires a "threat of future litigation" by the competing claimants. 6247 Atlas Corp. v. Marine Ins. Co., No. 2A/C, 155 F.R.D. 454, 463 (S.D.N.Y. 1994); see A/S Krediit Pank v. Chase Manhattan Bank, 155 F. Supp. 30, 34 (S.D.N.Y. 1957) (same). NAC cites no case in which a party was allowed to interplead without actual litigation or a threat of it by both claimants.

20

Another way of framing NAC's problem is that its motion essentially comes too late. As another court has noted, "The crucial difference between this case and an interpleader action is that in an interpleader action the stakeholder has not yet paid either of the claimants. Here the money has already been paid out. [The stakeholder] is therefore too late to file an interpleader action." Taylor v. Kemper Fin. Servs. Co., No. 98 C 0929, 1999 WL 782027, at *4 (N.D. Ill. Sept. 27, 1999) (citing Chase Manhattan Bank, N.A. v. Flexwatt Corp., 139 F.R.D. 573, 574 (D. Mass. 1991)); see also Lincoln Nat'l Life Ins. Co. v. Barton, 250 F.R.D. 388, 389-90 (S.D. Ill. 2008) (finding Rule 22 interpleader inappropriate where the insurer had already paid the proceeds and was no longer a stakeholder).

Jackson's motion to dismiss NAC's interpleader will therefore be granted, and the interpleader will be dismissed with prejudice.

### 2. Unjust Enrichment (Cross-claim Count II)

Finally, Jackson moves to dismiss NAC's cross-claim against her for unjust enrichment on the ground that NAC paid her pursuant to its contractual obligations, which precludes the possibility of any equitable claim. NAC argues that should it be found to have paid Jackson by mistake – i.e., that the annuity contract did not require payment – then it would be inequitable for Jackson to be permitted to keep the annuity proceeds when she had no contractual entitlement to them.

21

Under North Carolina law, "unjust enrichment 'is a claim in quasi contract or contract implied in law' which arises when a party 'confers a benefit upon another which is not required by a contract either express or implied [in fact] or a legal duty [and] the recipient thereof is . . . unjustly enriched and [is] required to make restitution therefor.'" M Series Rebuild, LLC v. Town of Mount Pleasant, 222 N.C. App. 59, 67, 730 S.E.2d 254, 260 (2012) (quoting D.W.H. Painting Co. v. D.W. Ward Constr. Co., 174 N.C. App. 327, 334, 620 S.E.2d 887, 892 (2005)) (citations and quotation marks omitted) (alterations in original). Unjust enrichment is demonstrated where a plaintiff "conferred a benefit on another, the other party consciously accepted the benefit, and the benefit was not conferred gratuitously." Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp., 351 F. Supp. 2d 436, 446 (M.D.N.C. 2005) (citing Se. Shelter Corp. v. BTU, Inc., 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002).

Here, NAC contends that if it was not contractually bound to pay Jackson as a beneficiary, as she claimed, then it conferred a non-gratuitous benefit on her which she accepted and should be required to return. Jackson's argument that this claim cannot proceed because she is a third-party beneficiary of the annuity contract, an express agreement, see Whitfield v. Gilchrist, 348 N.C. 39, 42, 497 S.E.2d 412, 415 (1998) (stating that the related theory of quantum meruit "is not an appropriate remedy when there

22

is an actual agreement between the parties"), misses the point. NAC's claim, asserted in the alternative, is predicated on the contingency that the factfinder may conclude that there was no contractual obligation to pay her. Insofar as Jackson has failed to cite a case holding that she should be entitled to keep the annuity proceeds should it ultimately be determined that Ernst is the legal beneficiary under the annuity, Jackson's motion to dismiss will be denied.

## III. CONCLUSION

For the reasons stated,

IT IS ORDERED that NAC's motion to dismiss (Doc. 15) is GRANTED as to count II (misrepresentation – unfair claims handling practices) and count III (estoppel/waiver) of the complaint, which will be DISMISSED WITH PREJUDICE, and DENIED as to count IV (negligent misrepresentation – gross negligence) to the extent noted herein.

IT IS FURTHER ORDERED that Jackson's motion to dismiss (Doc. 22) is GRANTED as to count I of the counter-claim against Ernst and cross-claim against Jackson (interpleader), which will be DISMISSED WITH PREJUDICE, and DENIED as to count II (unjust enrichment).

/s/   Thomas D. Schroeder
United States District Judge

March 27, 2017